744 P.2d 455

**In the Matter of the Appeal in PIMA COUNTY DEPENDENCY ACTION NO. 93511.**

No. 2 CA–JV 87–0014.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 15, 1987.

Redesignated as Opinion and Publication Ordered Oct. 26, 1987.

Robert K. Corbin, Atty. Gen. by Sara S. Wisdom, Tucson, for Ariz. Dept. of Economic Sec.

Ann M. Haralambie, Tucson, for Natural Mother.

Daniel J. Hochuli, Tucson, for minor.

OPINION

PER CURIAM.

The juvenile court found appellant's 13–year–old daughter to be a dependent child. Appellant, the minor's natural mother, filed a timely appeal, essentially arguing that there is insufficient evidence to support the decision of the court.

The dependency petition alleged that the child was in need of proper and effective care and control and had no parent or guardian willing to exercise or capable of exercising such care and control. It further alleged that the minor telephoned the Tucson Police Department asking for help and assistance following an incident during which her stepfather hit her several times on the legs with a belt. Once in custody, the minor reported to officers that she had been hit at home by her mother and stepfather with belts, extension cords, a big, thick whip and a thick rubber molding. The minor also reported that she had been subjected to verbal abuse by appellant and the stepfather. The petition sought to have the child declared to be dependent as defined in A.R.S. § 8–201(11)(a) and (b).

When officers responded to the minor's telephone call, the then 12–year–old child, her 11–year–old brother, and her four-month-old brother were taken into custody. After a Child Protective Services investigator had interviewed the minor and her parents, her brothers were returned to the home. The CPS investigator testified that after speaking with appellant's daughter, appellant, her husband (the minor's stepfather), responding officers, and the minor's older sister who had previously left the home, she determined that the minor would

be at risk if returned to the home. The responding officer testified that the minor showed *no visible signs of physical abuse* and that there were no marks on her legs where she had allegedly been hit by her stepfather with a belt. Appellant testified that her daughter has been disciplined by appellant by hitting her hands with a belt. Appellant also testified that her husband had never hit the minor; however, she later conceded that during an interview with the CPS investigator she acknowledged that her husband had previously hit the minor with a belt. Appellant further testified as follows:

Q From where did you learn to discipline, spanking her hands with a belt?

A From the way my mom did me.

Q And did you consider that when your mother hit your hands with a belt that you were being abused?

A No. From the way she abused me that's why I hit [my daughter] in her hands from the way I was abused.

Q Were you disciplined more harshly than you discipline your children?

A Yes.

\* \* \*

Q You also said that you had many fallings out with your husband ... about the kids' discipline. You said "falling out." Now, can you explain that?

A Talking to him about my, you know, about whipping the kids. Just to whip the kids.

At the time of the hearing, the minor had been *out of the home* and *in foster care* for more than four months. She testified in chambers that the incident arose when her stepfather told her she must stay at home and take care of her four-month-old brother and that she could not attend a social event with her "big sister" from the Big Brothers/Big Sisters organization. She reported to police, and appellant testified, that once before when she had been left alone with her baby brother she was frightened because he had choked and she did not know how to handle the situation. The minor testified that her stepfather hit her hard with a belt twice and that on numerous occasions her mother used a belt or a piece of black rubber molding to hit her hands or her legs. The minor testified that she liked her foster home and foster family but that she wants to live at her own house. She stated that she is not afraid of her mother or her stepfather but that she and her mother needed the services of a counselor.

At the close of the hearing, appellant's counsel argued that there was insufficient evidence upon which to base a finding of dependency. Appellant's counsel did, however, acknowledge the necessity for counseling. We agree with counsel for the minor, the minor's guardian ad litem, and counsel for the state in concluding that the incident with the minor's stepfather which led to police intervention is less significant than the discovery that appellant inflicts frequent physical punishment on her daughter with a belt or a piece of rubber. We are concerned, as was the trial court, not with the severity of the punishments, but with the state of mind of appellant and the fact that she feels that frequent physical punishment of the nature described is appropriate, and with the verbal abuse which the minor testified that she receives. The minor's desire for family counseling indicated fear and hesitation about her mother's ability to make a change in those methods. The testimony reveals that appellant refused to acknowledge excessive punishment or abuse on her part, nor was she willing to participate in counseling voluntarily. Additionally, we agree with the trial court's concerns about the stepfather's role in discipline. The court stated:

I have concerns about the stepfather, what his role is in his disciplining.

Now, [appellant's counsel] has good points about the cultural differences, the difference from other cultures. That concerns me to do it that way, the whipping, because the mother was brought up that way.

There is a parent certainly willing to take care of [the minor]. Able in one sense, but there's another sense that tells me it's not in [the minor's] best interests. I do find the status of dependency does exist.... But we will talk

about a possible return of [the minor]. I definitely would like return when that's appropriate.... I think that's my biggest concern that we make sure the mother gets into counseling.

The court ordered that the minor remain in her foster home placement and that the care, custody and control of the minor be placed with the Department of Economic Security. Additionally, the court ordered immediate crisis counseling pending DES' initiation of long-term counseling. The court ordered appellant to attend parenting classes and provided for weekend visitations between the minor and her family starting May 29, 1987.

On appeal, appellant argues that the state may not interfere in the parent-child relationship for the purpose of eliminating physical discipline. Appellant argues that the court cannot find dependency absent a clear showing of abuse or neglect and that a dependency adjudication is appropriate only when parental care has dropped below a standard of "near adequacy." While we agree with appellant's general statements, we do not find the evidence insufficient in this case. Our review of the record shows an adolescent daughter subjected to frequent physical punishment inflicted with a belt or similar instrument by appellant because she had been punished that way as a child. The record also reveals similar punishments by the minor's stepfather, as well as verbal abuse and obscene name-calling of the minor by her mother and stepfather. The petition alleged that the minor was in need of proper and effective parental care and control with no parent willing to or capable of exercising such care and control. The whereabouts of the minor's natural father are unknown. The court found the allegations of the petition to be substantially true as to appellant, the minor's natural mother. In other words, the court found that the minor is in need of proper parental care and, at the time of the adjudication, that she did not have a parent capable of exercising such proper care.

We cannot substitute our opinion for that of the juvenile court, and we will affirm the court's findings unless they are clearly erroneous. *Appeal in Maricopa County Juvenile Action No. JS-4374*, 137 Ariz. 19, 667 P.2d 1345 (App.1983). We believe the evidence in this case satisfied the definition of a dependent child pursuant to A.R.S. § 8–201(11)(a). While it is true that a parent-child relationship involves fundamental rights, including the ability to determine how to discipline the child, it is also true that state interference in the family is not prohibited when the health and welfare of a child is threatened. Our supreme court has stated:

> This state recognizes that children are not property of their parents whose control may only be interrupted by a finding of fault; on the contrary, Arizona recognizes that children as persons have special needs and rights which are protected by law. One of those rights is the right to effective and proper parental control and care. If a child is found to be without such parental care and control and without parents willing or capable of exercising such care and control, the child is a dependent child and entitled to have such parent control furnished through the state.

*Appeal in Maricopa County Juvenile Action No. J-75482*, 111 Ariz. 588, 590–91, 536 P.2d 197, 199–200 (1975). We believe the evidence supported the court's conclusion that the minor was without a parent capable of exercising proper control at that time. All parties and counsel, as well as the juvenile court, expressed a concern that counseling be afforded the family immediately so that appellant and her daughter could be reunited. Even the minor testified that she wished to return home but that she felt counseling was necessary. In the state's capacity as parens patriae, it may intrude into the parent-child relationship in the interest of the future well-being of minor children residing here. *Appeal in Maricopa County Juvenile Action Nos. A-23498 and JS-2201*, 120 Ariz. 82, 84, 584 P.2d 63, 65 (App.1978). This state interest not only concerns the child's physical and emotional well-being, but also reflects an interest in fostering good citizens. *Appeal in Gila County Juvenile Action No. J-3824*, 130 Ariz. 530, 534, 637 P.2d 740, 744

(1981), *overruled on other grounds, Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). When such interests are at stake, state intrusion into the family relationship is justified. *Id.*

In this case, we cannot say that the juvenile court's findings and order constituted a clear abuse of discretion or that there is no supporting evidence. The circumstances presented here pose a most difficult determination; however, the juvenile court was in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings. The order of the juvenile court is affirmed.