NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.S., T.S., *Appellees*.

No. 1 CA-JV 14-0084

FILED 09-18-2014

Appeal from the Superior Court in Yavapai County
No. P1300JD201200083
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge John C. Gemmill joined.

---

**W I N T H R O P,** Judge:

**¶1**        Robert S. ("Father") appeals the juvenile court's order terminating his parental rights to T.S. ("Son") and T.S. ("Daughter") (collectively, "the children").   Father alleges the juvenile court (1) erred when it denied Father's request to withdraw from a mediation agreement and (2) violated Father's due process rights.   For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        In November 2012, the Arizona Department of Economic Security ("ADES") filed a dependency petition against both Father and the children's biological mother ("Mother").[1]   During a mediation session, Father signed an agreement denying the allegations in the petition and submitting the matter of dependency to the court on the record.   The juvenile court found the children dependent as to Father in February 2013 and approved ADES' case plan of family reunification.

**¶3**        In November 2013, after Father and Mother failed to progress toward family reunification, ADES filed a motion for termination.[2]   As to Father, ADES asserted two specific grounds for termination of the parent-child relationship.   First, ADES asserted Father neglected the children or failed to protect them from neglect, thereby causing a substantial risk of harm to their welfare.   *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2) (West

---

[1]        In May 2014, Child Protective Services ("CPS") was removed as an entity within ADES and replaced by the Department of Child Safety ("DCS"), an entity outside of ADES.   In its answering brief, DCS refers to the parties as they existed at the time of the proceedings, and so do we.

[2]        Mother has not appealed the subsequent severance of her parental rights and is not a party to this case.

2014).[3] ADES alleged Daughter was born three months' premature, was exposed to marijuana, and suffers from a severe gastro-intestinal disorder, which has required her to be fed through a Gastronomy Tube ("G-Tube") since birth. Because both parents engaged in acts of verbal and physical domestic violence, Mother left the family home in June 2012 to safeguard her well-being, leaving Father as the sole caregiver of the children. By the time the children were removed from the home by CPS in November 2012, Daughter was suffering from malnourishment, as well as both a yeast and bacterial infection at the G-Tube site.

¶4        ADES further asserted Father neglected the children due to an unfit and unsafe home. The family home contained "piles of animal feces throughout the home, including the children's room." ADES also found several other dangerous items that were accessible to the children, including liquor bottles, razors, cleaning chemicals, lighters, cigarettes, and an X-acto knife. The family dogs, located in cages in the backyard, had no food or water and were surrounded by empty beer cans and destroyed furniture.

¶5        As a second basis for termination, ADES asserted Father is deprived of his civil liberties due to a conviction of a felony and the felony is of such nature as to prove Father's unfitness to have future custody and control of the children. *See* A.R.S. § 8-533(B)(4). On December 17, 2012, Father was sentenced to three and a half years' incarceration in the Arizona Department of Corrections for two counts of child abuse by domestic violence and one count of cruelty to animals.

¶6        At the initial hearing on the motion to terminate, Father's counsel stated that Father wished to assert his right to a trial. The juvenile court then set the matter for mediation and for trial. On January 31, 2014, a mediation session was held and the parties signed an agreement documenting Father's denial of ADES' allegations and the parties' agreement to submit the issue of severance to the court on the record existing at the time of the severance hearing. [4]

¶7        The agreement further documented that the parties had "freely and voluntarily enter[ed] into the above agreement . . . [as a] result

---

[3]        We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

[4]        Father's attorney signed the mediation agreement for Father because Father appeared telephonically.

of good faith discussions"; and that the parties had discussed the agreement with their counsel, and "[t]he parties have been advised, by their counsel, of their trial rights in this matter and understand and agree that they are waiving their right to a trial on the agreed issues set forth herein by signing this agreement." The juvenile court approved the parties' written agreement, making it an order of the court on February 4, 2014.

¶8 On February 11, 2014, during a pretrial conference, Father's counsel explained Father had since "taken advantage [of] the law books in the prison library" and now did not wish to submit the matter to the court. Father's attorney argued that the agreement should be set aside as no "meeting of the minds" occurred to form an enforceable agreement. The attorney for the children disagreed with Father's attempt to withdraw from the mediation agreement, explaining that the parties had a lengthy discussion and Father's concerns were primarily the ultimate placement of the children. Counsel for ADES argued an enforceable agreement existed and Father had knowingly, willingly, and intelligently entered the agreement, as he had been fully informed and spent time discussing the issues with his attorney. The court noted it had already adopted the parties' agreement as an order.

¶9 After discussing other pretrial matters, the juvenile court then engaged in the following colloquy with Father regarding the subject mediation agreement:

> THE COURT: All right. And sir, you understand that the issue of placement and the issue of whether or not I terminate your parental rights are two separate issues, correct?
>
> THE FATHER: Yes, ma'am.
>
> THE COURT: All right. And you were present by phone at the mediation in this matter, correct?
>
> THE FATHER: Yes, ma'am.
>
> THE COURT: And --
>
> THE FATHER: I wasn't, I wasn't under the impression that by agreeing to denying all allegations that I was thereby saying it was okay for you to sever[] my rights, though.

4

THE COURT: That means, the terms of the parties' agreement, I'm looking at it now, it says [Father] will deny the allegations in the motion to terminate and submit the matter of severance to the court on the record. That means that what would happen is I would be given testimony as well as the written statements that I've given you until February 26th to submit and then I would review the entire record in this matter prior to making a decision about the motion for termination. Do you understand that sir?

THE FATHER: Yes, ma'am.

THE COURT: All right. And so I still have to make a determination that the record supports terminating your parental rights before I can grant the motion. Do you understand that?

THE FATHER: Yes, ma'am.

THE COURT: And do you understand that's a different issue than where your children are going to be placed?

THE FATHER: Yes I do, ma'am.

The court subsequently found that no legal grounds existed to set aside the mediation agreement.

¶10　　　　On March 4, 2014, the court held a review/severance hearing to take testimony regarding the pending motion for termination. Due to his incarceration, Father participated telephonically and was represented by counsel. In accordance with the court's prior order, Father had submitted a written statement and other documents, which the court reviewed before the hearing. At the hearing, a CPS unit supervisor testified extensively regarding the allegations in the motion to terminate, and both Father's attorney and Mother's attorney cross-examined the unit supervisor, as did an attorney for the children's great aunt and uncle. Although given the opportunity to testify or present other testimony, Father and his counsel did not do so. Ultimately, the court granted ADES' motion to terminate. As to Father, the court found by clear and convincing evidence that Father (1) neglected or failed to protect a child from neglect so as to cause a substantial risk of harm to the child's health or welfare; (2) neglected the children due to an unsafe and unfit home; and (3) is deprived of his civil

liberties due to a conviction of a felony and the felony is of such a nature as to prove Father's unfitness to have future custody and control of the children.

**¶11**    The court also found that ADES proved by a preponderance of the evidence that terminating the parent-child relationship served the best interests of the children.  Father's attorney neither objected to the court's findings nor raised the issue of the court's refusal to allow Father to withdraw from the mediation agreement.  Father timely filed a notice of appeal.   We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

**¶12**    Father presents two issues for review: (1) whether the juvenile court abused its discretion when it denied Father's request to withdraw from the mediation agreement; and (2) whether the juvenile court violated Father's due process rights.  "We will not disturb the juvenile court's order severing parental rights unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them."  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998).

 I. *The juvenile court did not abuse its discretion when it denied Father's request to withdraw from the mediation agreement.*

**¶13**    To determine whether the juvenile court abused its discretion, we first look to the terms of the mediation agreement and decide if Father knowingly, intelligently, and voluntarily entered the agreement.  We review *de novo* the legal determinations of a trial court.  *Meryl R. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 24, 25, ¶ 4, 992 P.2d 616, 617 (App. 1999).

**¶14**    The four-paragraph mediation agreement explicitly documents that Father knowingly, intelligently, and voluntarily entered the agreement.  Specifically, the mediation agreement notes "[t]he parties, in an effort to settle their differences, *freely and voluntarily* enter into the above agreement."  (Emphasis added.)  In addition, the agreement states "[t]he parties have been advised, by their counsel, of their trial rights in this matter and *understand and agree that they are waiving their right to a trial* on the agreed issues as set forth herein by signing this agreement."  (Emphasis added.) Such language demonstrates not only that Father's counsel advised Father of the nature of the agreement, but that Father also understood the rights he was waiving by entering the agreement.

**¶15** The circumstances surrounding the formation of the mediation agreement also demonstrate Father assented in a knowing, intelligent, and voluntary fashion. First, at the February 11, 2014 pretrial conference, both counsel for ADES and the attorney for the children asserted without objection that Father had ample time to discuss the issues and the proposed agreement with the parties and with his attorney. Second, Father's previous consent to an identical agreement during an earlier mediation session regarding the issue of dependency diminishes any suggestion that he did not understand and assent to the same terms within the severance mediation agreement. Finally, we note that Father never objected to his attorney signing the agreement on his behalf. On this record, we easily conclude Father knowingly, intelligently, and voluntarily entered the mediation agreement.

**¶16** We next determine whether the juvenile court erred in denying Father's request to withdraw from the mediation agreement. In making that determination, we apply an abuse of discretion standard similar to that used in the criminal context, which protects fundamental rights similar to a "parent's fundamental liberty interest in the care, custody and management of his or her children." *Kelly R. v. Ariz. Dep't of Econ. Sec.*, 213 Ariz. 17, 22, ¶ 27, 137 P. 3d 973, 978 (App. 2006); *State v. Djerf*, 191 Ariz. 583, 594, ¶ 35, 959 P.2d 1274, 1285 (1998). An abuse of discretion occurs when the record is "devoid of competent evidence to support the decision of the trial court." *Fought v. Fought*, 94 Ariz. 187, 188, 382 P.2d 667, 668 (1963). "[T]he juvenile court [is] in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987). This court will not substitute our opinion for that of the juvenile court unless the court's findings are clearly erroneous. *Id.* at 545, 744 P.2d at 457 (citation omitted).

**¶17** The juvenile court did not abuse its discretion by refusing to allow Father to withdraw from the mediation agreement. During the pretrial hearing, Father's counsel asserted no "meeting of the minds" had occurred sufficient to establish an agreement. As we have recognized, however, the trial court found and the record demonstrates that the proposed terms of the agreement were discussed, and that Father was aware of his trial rights when he authorized his attorney to sign the agreement.

**¶18** After Father asked to withdraw, the court specifically addressed Father at the pretrial hearing to confirm Father had understood the terms of the mediation agreement. First, the court asked Father if he

understood placement and termination of parental rights were two separate issues, and Father answered affirmatively. Father then asserted, "I wasn't under the impression that by agreeing to denying all allegations that I was thereby saying it was okay for you to sever[] my rights, though." The court explained that entering the agreement did not mean that the court had already determined that sufficient evidence existed to sever the parental relationship, and that the court "would be given testimony as well as the written statements and then [the court] would review the entire record in this matter prior to making a decision about the motion for termination." When the court asked Father if he understood this process, Father answered, "Yes, ma'am."

¶19 On appeal, Father does not point to anything in the record that demonstrates Father's fundamental misunderstanding of the nature or consequences of the mediation agreement. The juvenile court did not abuse its discretion in enforcing the mediation agreement because Father's assertion that he "no longer wishe[d] to submit" effectively demonstrated Father had previously agreed to the terms of the mediation agreement and subsequently had a change of heart, not that Father misunderstood or did not previously assent to the mediation agreement. Father's responses to the colloquy with the court demonstrate Father ultimately understood his entering the agreement did not *automatically* sever his rights; rather, the court would make a determination based on the entire record. It is clear from the record that Father had simply changed his mind about the court process. The juvenile court had the authority and discretion to not allow Father to withdraw from the agreement and submission process. On this record, we cannot conclude that the court abused its discretion when it denied Father's request to withdraw from the mediation agreement.

II. *The juvenile court did not violate Father's due process rights.*

¶20 Father asserts that the juvenile court violated his due process rights when the court allegedly failed to comply with Rule 66, Ariz. R.P. Juv. Ct., during the severance proceedings. Even assuming *arguendo* that Father has not waived this claim, we find no violation of Father's due process rights.

¶21 The parties appear to concede that Father's denial of the allegations set forth in the mediation agreement constituted a plea of "no contest," but even if so, the court did not violate Father's due process rights

and adhered to the requirements of Rule 66.[5]  Here, the court approved and adopted the mediation agreement as an order on February 4, 2014.  During a subsequent pretrial hearing, the court determined Father had assented to the mediation agreement and no legal ground existed to set aside that agreement.  The court explained "[t]hat the mediation agreement specifically states that [Father] was aware of his trial rights."  Most significantly, the court found by clear and convincing evidence that ADES had proven the allegations in the motion to terminate.  These determinations by the juvenile court satisfy the requirements of Rule 66.

**¶22**        Furthermore, Father was not denied due process because the court held a review/severance hearing that afforded Father the same trial rights he would have received at a "formal" trial.  In fact, a formal trial is not required under Rule 66(D).  In part, Rule 66(D) states that "[t]he presentation of evidence at the termination adjudication hearing shall be as informal as the requirements of due process and fairness permit and shall generally proceed in a manner similar to the trial of a civil action before the court without a jury."  In accordance with Rule 66(D), the court provided Father with several opportunities to present evidence on his behalf.  The court allowed Father to present evidence and a statement, and Father did so.  Father and his counsel had the opportunity but did not call additional

---

[5]        Subsection (1) of Rule 66(D) states as follows:

1.  Admission/No contest. The parent, guardian or Indian custodian may waive the right to trial on the allegations contained in the motion or petition for termination of parental rights by admitting or not contesting the allegations.  An admission or plea of no contest may be oral or in writing.  In accepting an admission or plea of no contest, the court shall:

  a. Determine whether the party understands the rights being waived;

  b. Determine whether the admission or plea of no contest is knowingly, intelligently and voluntarily made;

  c. Determine whether a factual basis exists to support the termination of parental rights; and

  d. Proceed with entering the findings and orders as set forth in subsection (F) of this rule.

witnesses.  At the hearing, Father cross-examined ADES' only witness.  The court also provided Father with an opportunity to speak on his own behalf during the hearing, but Father chose not to do so.  After considering all of the evidence, the court applied the same burden of proof it would have applied at a formal trial.  *See* Ariz. R.P. Juv. Ct. 66(C).  Moreover, Father points to no evidence he was precluded from presenting and does not point to, nor do we find, any prejudice suffered by his knowing and voluntary waiver of rights in the mediation agreement.  Because the court fully complied with Rule 66, Father's claim of a due process violation fails.

**CONCLUSION**

¶23        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: gsh