NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EUGENE W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, P.W., *Appellees.*

No. 1 CA-JV 15-0249
No. 1 CA-JV 15-0251
FILED 2-25-2016

Appeal from the Superior Court in Maricopa County
No. JD28834
No. JD28860
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

¶1          Eugene W. ("Father") appeals the juvenile court's rulings finding children[1] I.W., F.W., and P.W. (collectively "the Children") dependent as to Father, contending the rulings were not supported by evidence.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Father and P.W.'s mother ("Mother") lived as one household with six children—including the Children, D.W. (fathered by Father with another woman), and two children Mother had with her ex-boyfriend.[2]  The Department of Child Safety ("DCS") got involved in 2014 when acts of domestic violence committed by Father toward Mother were reported to DCS.

¶3          Father and Mother denied any incident of domestic violence, and refused all services offered by DCS except visitation.  In 2014, DCS petitioned the juvenile court to find the Children were dependent as to Father.[3]  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-202(B) (granting the juvenile court

---

[1]      I.W. and F.W., Father's biological children, have a different mother from P.W.; Father's name does not appear on P.W.'s birth certificate.  At one point, Father questioned his paternity of P.W., but did not take a paternity test to prove his suspicion.  Without proffering any evidence, Father claimed at trial that he had later filed an acknowledgment of paternity with Washington, P.W.'s birth state.  The juvenile court found Father's paternity of P.W. was not established; it nevertheless adjudicated the dependency of P.W. as to Father and the unknown father.

[2]      Mother and the other three children are not parties to this appeal.

[3]      DCS also petitioned to find P.W. dependent as to Mother.

exclusive original jurisdiction over dependency matters).[4]  After a bench trial, the juvenile court found DCS had proved by the preponderance of evidence that Father committed acts of domestic violence in the presence of the Children and the Children were dependent as to Father.

**¶4**          Father timely appealed.  We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

**¶5**          We review the juvenile court's rulings and findings on dependency for abuse of discretion, and will not disturb them unless not supported by reasonable evidence. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21, 119 P.3d 1034, 1038 (App. 2005).  We also view the evidence in the light most favorable to upholding the juvenile court's order. *Id.*

**¶6**          Parental rights in the care, custody, and management of their children are fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12, 995 P.2d 682, 684 (2000)).  Finding a child dependent does not sever parental rights and therefore does not require the heightened level of burden of proof as severing parental rights; a court may find a child dependent as to a parent if proved by preponderance of evidence. *Cochise Cty. Juv. Action No. 5666-J*, 133 Ariz. 157, 159, 650 P.2d 459, 461 (1982).  The court's paramount consideration in dependency proceedings is the best interest of the child. *Id.* at 161, 650 P.2d at 463.  A child is dependent if the child is found to be without parental care and control, no parent is willing or able to provide such care or exercise such control, or the child's home is unfit by reason of abuse or neglect.  A.R.S. § 8-201(14)(a)(i) & (iii); *Pima Cty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 604, 785 P.2d 121, 124 (App. 1990); *Pima Cty. Dependency Action No. 93511*, 154 Ariz. 543, 545, 744 P.2d 455, 457 (App. 1987).  This definition is met if a parent is unwilling or unable to protect the child from abuse, including domestic violence committed by one parent toward the other parent in the presence of the child. *Shella H. v.*

---

[4]          We cite the current version of the applicable statutes unless revisions material to this decision have occurred since the events in question.

*Dep't of Child Safety*, No. 1 CA-JV 15-0140, 2016 WL 126294, at *3, ¶ 14 (App. Jan. 12, 2016).[5]

**¶7**          Father denies he ever committed domestic violence or had a problem with anger, and asserts all six children were coached, probably by Mother's ex-boyfriend, to tell DCS stories of him committing acts of domestic violence toward Mother.  In her testimony, Mother likewise denied any incidence of verbal or physical abuse by Father, and also denied she had ever been told that the children had reported witnessing several instances of verbal and physical abuse by Father; however, the juvenile court expressly found Mother and Father were not credible witnesses on this issue.  The exhibits admitted at trial clearly documented the fact that Mother had been told that the children reported witnessing the verbal and physical abuse directed by Father at Mother.  Further, Mother's sister testified that Mother reported the verbal and physical abuse by Father to her over the phone, via instant messages, and via Facebook messages. Mother also sent her a photograph of injuries to Mother's face caused by Father.[6]  Even excluding the hearsay reports from the children, there is ample evidence in the record to support the trial court's explicit finding that, by a preponderance of the evidence, Father had committed acts of domestic violence against Mother in the presence of at least one of the children, and that all three children in these two cases were dependent because "Father is unable to properly and effectively care for them and because their home is unfit by reason of abuse."

**¶8**          Father contends that there is no evidence showing he abused or neglected the Children; that the Children want to be back with him; that he has provided for the Children; and that he has fully complied with DCS's requests.  The record, however, demonstrates the opposite to be true.  All of the Children are fearful of Father; none of them expressed any desire to go home unless and until Father and Mother completely address the issue of domestic violence.  Although there is no evidence that Father directly

---

[5]          As of issuance of this decision, only Westlaw citation is available for this opinion.

[6]          Both Mother's sister and case representatives of DCS testified that the children told them about Father's abuse of Mother.  In the court's ruling, the court found that this testimony did not fall within the hearsay exception available under A.R.S. § 8-237 or Juvenile Court Rule 45 because the children were not describing instances of domestic violence directed at them.  Accordingly, the court indicated it was disregarding the hearsay statements attributed to the children.

abused or neglected the Children, the court explicitly found that Father has exposed them to domestic violence and that the Children have been negatively affected by Father's acts of domestic violence: I.W. struggled academically, fought with her peers, and had age-inappropriate tantrums; F.W. "shut down" to mask her feelings; P.W. regressed in her speech skills, suffered constant nightmares, and developed social issues. Lastly, Father has stonewalled DCS's recommended interventions. Except visitation, he has refused all services provided by DCS and set up his own purported therapeutic program, has refused to undergo drug or paternity testing, has rejected all DCS's referrals to psychologists or parent aides, and did not cooperate with DCS in arranging paternity testing or visitation.

¶9        Father's only colorable attempt of compliance with DCS was to follow the recommendation by Dr. Pecaut—a clinical psychologist Father and Mother found on their own after rejecting all referrals from DCS—to participate in joint counseling on domestic violence. As noted by Dr. Azzi—the DCS consulting psychologist, however, joint counseling involving the potential perpetrator and the potential victim does not effectively address the issue of domestic violence as the potential perpetrator is likely too dominating during the counseling.[7] Moreover, both Drs. Pecaut and Azzi opined the parties would not benefit from therapy if, in therapeutic settings, they deny the existence of domestic violence. Father and Mother did just that—denying all incidents of domestic violence during their sessions with Dr. Pecaut and later in the joint counseling sessions. On this record, the juvenile court did not abuse its discretion in finding that the services Father substituted for the DCS recommended services failed to address the issue of domestic violence, and that DCS met its burden proving the Children were dependent as to Father.

---

[7]        Besides finding the Children dependent, the juvenile court ordered Father and Mother to undergo separate counseling.

## CONCLUSION

¶10    The juvenile court's rulings are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama