NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LETICIA A.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.G.,
*Appellees*.

No. 1 CA-JV 17-0240
FILED 12-26-2017

Appeal from the Superior Court in Maricopa County
No. JD530303
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee DCS*

_____

**MEMORANDUM DECISION**

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

_____

**T H U M M A**, Chief Judge:

¶1        Mother Leticia A. appeals the superior court's order finding R.G. dependent as to her. Because Mother has shown no reversible error, the order is affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        Leticia A. is the mother of R.G., born in May 2010. In the first part of 2016, the Department of Child Safety (DCS) learned Mother had been diagnosed with behavioral health disorders and had neglected and lost contact with three of her other children. In September 2016, DCS took R.G. into care. In the dependency petition, DCS alleged R.G.'s father (who is not a party here) had sole custody of R.G. pursuant to family court orders but that he was unable to parent due to substance abuse and neglect, citing "arrest" as the reason for taking R.G. into custody. By the time of the filing of the petition, however, father apparently was not in custody, as R.G. remained in his care.

¶3        DCS alleged Mother

> is unable to parent due to mental health issues. Mother reported that she suffers from PTSD [Post Traumatic Stress Disorder] and is seeing a psychiatrist. There are concerns that Mother has other mental health issues that are not being addressed. Because of Mother['s] mental health issues, the Family Court has given Father sole

_____

[1] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

legal and physical custody of the child. Mother
has limited parenting time with the child.

**¶4**      R.G. was found dependent as to father in mid-October 2016, and the court adopted a case plan of remain with family, placing R.G. in father's care. Mother contested the dependency. In November 2016, after an unsuccessful mediation, the court set a March 2017 adjudication hearing. At a February 2017 hearing, the parties discussed possible dismissal, with the court denying "any motions to dismiss at this time." At that same hearing, the court vacated the March 2017 trial.

**¶5**      In a memorandum filed later in February 2017, DCS stated it no longer wished to dismiss the dependency, noting father "has since been determined to be an inappropriate caregiver" and "DCS does not agree with Mother's assertions that she is capable of parenting" R.G. The court then took physical custody, removing R.G. from father's care, and set a May 2017 trial for the dependency allegations as to Mother.

**¶6**      The trial evidence showed that the assigned DCS case worker had concerns about Mother's untreated mental health issues, which could cause lack of insight and awareness, and unpredictable and irrational behavior. In November 2016, Mother participated in a psychological evaluation, with the psychologist diagnosing Mother with PTSD; generalized anxiety disorder; attention deficit/hyperactivity disorder; a history of physical partner abuse and related issues. The psychologist concluded Mother's prognosis of being a minimally adequate parent was poor, unless these issues were treated. The recommendation was that Mother engage in individual therapy and Dialectical Behavioral Therapy (DBT), complete a bonding assessment and a psychiatric evaluation, noting that if Mother did not "complete [these] services, that prognosis would not budge."

**¶7**      Although DCS set up a psychiatric evaluation for Mother in March 2017, she failed to participate. Mother said she had a psychiatric evaluation completed in December 2016, but provided no documentation (although she was taking medications, inferring such an evaluation had occurred). In the first part of 2017, DCS set up DBT counseling for Mother, but she "wanted to wait until the pretrial conference, and after speaking with her attorney" before participating; Mother later scheduled her first DBT counseling session for the day after trial.

**¶8**      Mother attended domestic violence counseling, behavioral health services and has her medication monitored at Valle del Sol

approximately every three weeks. Mother completed some services and generally had good interactions with R.G. But along with failing to participate in the psychiatric evaluation and pre-trial DBT counseling, Mother was inconsistent in taking medication. Mother did not provide DCS records regarding her employment or a residential lease. Moreover, the evidence reflected issues with R.G.'s behavioral health and conduct.

**¶9** At trial, Mother, the DCS case worker and the psychologist testified and the court received various exhibits. After the close of evidence and arguments of counsel (including R.G.'s guardian ad litem, who agreed with the dependency), the superior court found R.G. dependent as to Mother based on neglect, including neglect related to untreated and unresolved issues of mental health, and adopted a family reunification case plan. The court commended Mother for working services and her desire to participate in DBT counseling, adding that the court "really want[s] you to be successfully reunified with your son."

**¶10** This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes (A.R.S.) sections 8-235(A), 12-2101(A) and 12-120.21(A) and Arizona Rules of Procedure for the Juvenile Court 103 and 104 (2017).[2]

## DISCUSSION

**¶11** As applicable here, a dependent child is a child whose home is unfit by reason of neglect by a parent, *see* A.R.S. § 8–201(15)(a)(iii), focusing on the circumstances at the time of the dependency trial, *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50 ¶ 12 (App. 2016). This court reviews the superior court's dependency finding for an abuse of discretion. *In re Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987). "[T]his court will not substitute its judgment for that of the [superior] court unless no reasonable evidence exists to support the [superior] court's

---

[2] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated. In August 2017, the superior court granted DCS' motion to dismiss the dependency, issuing temporary family court orders placing R.G. with father. Given that dismissal nearly four months ago, this court suggested this appeal may be moot; both parties disagreed, however, including noting possible collateral consequences. *See also* A.R.S. § 8-804(A). Accordingly, this court vacates the stay of this appeal previously ordered and resolves the appeal on the merits.

finding." *Maricopa Cnty. Juv. Action No. JD–500200*, 163 Ariz. 457, 461 (App. 1989) (citation omitted).

**¶12**        Mother argues there was "insufficient evidence to support the court's order of dependency." Although DCS raised "concerns" regarding her mental health, Mother contends the evidence showed she could parent R.G. To the extent that Mother suggests some of the trial evidence was in conflict, she is correct. Resolving that conflict, however, is for the superior court at trial, not this court on appeal. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002) (citing cases).

**¶13**        Viewed in a light most favorable to sustaining the dependency finding, the evidence allowed the superior court to conclude that there were significant concerns about Mother's untreated mental health issues, unpredictable and irrational behavior and lack of insight. The November 2016 psychological evaluation diagnosed Mother with a variety of significant behavioral health issues, with a poor prognosis unless treated. Mother was not regularly attending appointments and medication checks at Valle del Sol. Moreover, Mother had not completed a psychiatric evaluation or provided documentation of such a recent evaluation and had not participated in DBT counseling. By scheduling her first DBT counseling for the day after trial, the court could conclude Mother recognized the need for such services but had not yet begun participating in those services. Both DCS and the guardian ad litem argued that the time to consider R.G. returning to Mother is "once the services are completed, not when they're just about to begin." The court agreed, noting it needed "a psychiatric evaluation with a full history by a psychiatrist, which is different than a primary care provider giving psychiatric medications." Moreover, by the time of trial, Mother had not been R.G.'s primary caregiver for a substantial period of time, as evidenced by the family court's orders that predated the dependency.

**¶14** There is no doubt that the trial evidence was in conflict and was not overwhelming. But DCS was not required to prove dependency by undisputed or overwhelming evidence. Rather, DCS was required to prove, by a preponderance of the evidence, that R.G. was dependent as to Mother. On the record provided, Mother has failed to show the superior court abused its discretion in finding that R.G. was dependent as to Mother.[3]

## CONCLUSION

**¶15** The order finding R.G. dependent as to Mother is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] Mother also asserts that her trial counsel was constitutionally deficient. The case she relies upon, however, did "not determine whether Arizona recognizes ineffective assistance of counsel as a separate ground for relief" for an order terminating parental rights. *John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 325 ¶ 17 (App. 2007). Moreover, Mother bases her assertion on the thought that her trial attorney should have called witnesses listed in her disclosure statements to address Mother's participation in services. Mother, however, has not shown how such testimony would differ from exhibits her attorney offered that were received in evidence. Nor has Mother offered any record support for her argument that these witnesses would have testified she was "successfully participating" in the services listed, given the disclosures do not include such statements.