NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EMILY L., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, H.R., P.G., A.G., *Appellees.*

No. 1 CA-JV 20-0355
FILED 3-11-2021

Appeal from the Superior Court in Maricopa County
No. JD538367
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

**W I N T H R O P**, Judge:

¶1        Emily L. ("Mother") appeals the juvenile court's order finding H.R., P.G., and A.G. (collectively, "the children") dependent as to her. Mother argues the juvenile court's ruling addressed concerns other than the dependency petition's allegation of inappropriate supervision, and that reasonable evidence did not support the finding of dependency.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother is the biological mother of the children.  Nicholas R. ("Nicholas") is the biological father of H.R., and Kristopher G.-W. ("Kristopher") is the biological father of P.G. and A.G.[1]  "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005) (citation omitted).

¶3        In April 2020, the Department of Child Safety ("DCS") received a report alleging Mother and Kristopher were consistently abusing substances while caring for the children, leaving drug paraphernalia in places accessible to the children, and failing to attend to the children's basic needs.  The report alleged A.G. had developed a severe diaper rash and was behind on immunizations.  None of the children—including H.R., who had stage-two kidney disease—had been to see a doctor since the family relocated from Georgia to Arizona in 2019.

¶4        DCS contacted Mother and Kristopher, who denied the allegations, although Kristopher admitted using recreational marijuana and prescription medication.  On May 5, Mother and Kristopher underwent substance-abuse testing.   Although Mother tested negative for all substances, Kristopher—the children's primary caregiver—tested positive for an "extremely high level[]" of cocaine.  Mother nevertheless claimed to be unaware of Kristopher's cocaine use.

¶5        On May 18, DCS implemented a present danger plan agreed to by Mother and Kristopher.  Under the plan, Mother and the children were to stay with the children's maternal great grandparents, and Mother was not allowed to take the children out of the home.  Two days later, however, Mother's relatives notified DCS that Mother had taken the children and left the home.  DCS took the children into temporary physical

---

[1]        Neither father is a party to this appeal.

custody later that day, after Mother reportedly had taken them to Kristopher and was planning to rent a car, leave Arizona, and drive them to Michigan. On May 21, DCS held a Team Decision Making meeting and implemented an in-home safety plan involving the maternal grandparents.

¶6 On May 26, DCS filed a dependency petition, alleging the children were dependent as to Mother due to neglect based on substance abuse and inappropriate supervision.[2] The petition alleged in part that Mother had left the children in Kristopher's care despite his substance abuse and substance-abuse-related behaviors, and she had failed to get appropriate medical care for the children.

¶7 DCS referred Mother to TERROS for a substance-abuse assessment, but after completing the intake, Mother did not meet the criteria for substance-abuse treatment. TERROS then recommended she receive individual mental health counseling and a psychiatric evaluation based on her self-reported anxiety and depression. Mother self-referred through her insurance for those services. Meanwhile, Kristopher continued to test positive for cocaine use.

¶8 At the June 2 temporary custody hearing, Mother testified Kristopher would be moving to Michigan within two days. Presumably, therefore, he would no longer be involved in the children's lives. On August 31, however, Mother informed the DCS case manager that she and Kristopher were still in a relationship. Moreover, Kristopher continued to see the children during supervised visitation, despite that as of September 2020, Kristopher had not engaged in substance abuse treatment. The case manager testified that although Mother claimed to understand the danger presented by Kristopher's substance abuse and planned for him to move out of her residence, she also minimized the issue. Mother and Kristopher continued in their relationship until October 6, when Mother contacted the

---

[2] Although Mother tested negative for all substances on May 5, 2020, family members had reported Mother was routinely and admittedly abusing cocaine. At the June 2 temporary custody hearing, the DCS case manager testified DCS had asked Mother to continue testing, and although "she was supposed to call in [for possible testing] seven times, [] she missed five." Nonetheless, Mother subsequently tested negative in the following months, and at the October 20 dependency hearing, the DCS case manager testified DCS was no longer concerned about Mother's alleged substance abuse. Moreover, the juvenile court did not find the children dependent as to Mother based on substance abuse. We therefore do not address Mother's argument that DCS failed to prove neglect based on substance abuse.

case manager to tell him that Kristopher was harassing her and she planned to leave him, stay at a hotel, and file for a restraining order. Mother did not file for the restraining order but claimed to have had no further contact with Kristopher in the two weeks before the October 20 dependency hearing.[3]

¶9        Mother was also referred for parent-aide services, and she began engaging in those services in late September. By the time of the October 20 dependency hearing, she had completed an intake and "a couple of skill sessions." She still had ten diminished skill capacities, however, including her ability "to protect [the children] against [Kristopher] and recognize threats." A.G. had recently been diagnosed with autism and was non-verbal, and the case manager discussed with Mother how she would care for the two youngest children while she was at work if they were to be returned home.[4] Mother had no identified plan, however. Mother's lack of a plan raised concerns because Mother had a "toxic relationship" with the maternal grandparents, wanted no involvement from them whatsoever, and generally "want[ed] to remain cut off [from] her family." Thus, DCS was concerned that without daycare or other childcare services in place, Mother might revert to relying on Kristopher for help with the children.[5]

¶10        On October 20, 2020, the juvenile court conducted the dependency adjudication hearing. After taking the matter under advisement, the court found the children dependent as to Mother, while noting Mother's diminished protective capacities and the short period since the breakup of her long-term relationship with Kristopher.

¶11        Mother timely filed a notice of appeal. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

---

[3]        At the October 20 dependency hearing, Mother testified Kristopher had not been living with her for approximately "a couple months."

[4]        Four days before the dependency hearing, DCS placed the eldest child, H.R., with Nicholas, her biological father, who lives in North Dakota. The two youngest children remained placed with the maternal grandparents.

[5]        At the time of the dependency hearing, Mother's relationship with Kristopher had just recently ended, and the DCS case manager expressed concern it might not truly be over.

**ANALYSIS**

*I.      Standard of Review and Applicable Law*

¶12      We review an order adjudicating a child dependent for an abuse of discretion and will not disturb the ruling unless no reasonable evidence supports it. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016). In a dependency matter, the juvenile court's primary consideration is the best interests of the children. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 234, ¶ 17 (App. 2007). The juvenile court is vested with "a great deal of discretion," *Cochise Cnty. Juv. Action No. 5666-J*, 133 Ariz. 157, 160 (1982), in part because that court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987). We do not reweigh the evidence on review. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

¶13      To find a child dependent as to a parent, the juvenile court must find by a preponderance of the evidence that the allegations contained in the petition are true. A.R.S. § 8-844(C)(1). A "dependent child" includes a child adjudicated to be:

> (i) In need of proper and effective parental care and control and who has . . . no parent or guardian willing to exercise or capable of exercising such care and control [or]
>
> . . . .
>
> (iii) A child whose home is unfit by reason of . . . neglect[6] . . . by a parent, a guardian or any other person having custody or care of the child.

A.R.S. § 8-201(15)(a).

¶14      Mother argues the juvenile court failed to address the dependency petition's allegation of inappropriate supervision and instead found the children dependent for reasons other than those alleged in the petition. She contends that DCS' concerns at the time of trial—including

---

6      Under A.R.S. § 8-201(25)(a), "neglect" means "[t]he inability or unwillingness of a parent . . . to provide [her] child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare."

that she (1) had no clear childcare plan, (2) had a strained and contentious relationship with the maternal grandparents, (3) had only recently begun engaging in parent-aide services, (4) had a child (A.G.) recently diagnosed with autism, (5) had expressed concerns over her mental health, (6) lacked a support system, and (7) had only recently separated from Kristopher—were unrelated to the dependency petition's allegation of inappropriate supervision. Mother further argues no reasonable evidence supports the finding of dependency based on improper supervision.

¶15 Here, the dependency petition alleged the children were dependent due to inappropriate supervision, which was manifested in Mother's leaving the children with Kristopher as the children's primary caregiver—despite Kristopher abusing cocaine and displaying substance-abuse-related behaviors while caring for the children—and Mother subsequently violating the present danger plan by taking the children to Kristopher and planning to leave Arizona with them. The juvenile court found that "Mother allowed contact with [Kristopher] after being informed of [Kristopher's] substance abuse and the dangers it presented to the children." The court also found Mother "has several diminished protective capacities"—primarily related to her inability to protect the children from Kristopher's substance abuse—and noted she "has not [yet] enhanced any of these protective capacities" during her brief engagement with parent-aide services. Finally, the court noted that although Mother testified that she had discontinued her relationship with Kristopher two weeks earlier, "it has been a short period of time given the length of their relationship." The juvenile court's findings—that Mother left the children in Kristopher's care despite his cocaine abuse, violated the present danger plan, planned to leave Arizona with the children and Kristopher, and claimed to have ended her relationship with Kristopher only two weeks before the dependency hearing—all related to the allegation in the petition that Mother was inappropriately supervising the children.

¶16 Moreover, reasonable evidence supported the juvenile court's findings. Although Mother claimed to be unaware of Kristopher's cocaine use, he initially tested positive for an extremely high level of cocaine, continued to test positive, and reportedly displayed behaviors related to substance abuse around the children. Further, Mother acknowledged she left her grandparents' home with the children, which was a violation of the agreed-upon present danger plan, and the children reported Mother took them to Kristopher and was planning to leave Arizona with them. And although Mother had begun parent-aide services, she still had ten diminished skill capacities at the time of the dependency hearing, including her capacity to protect the children against Kristopher and recognize threats

to the children. Finally, although Mother testified that she ended the relationship with Kristopher as of October 6, the court had strong reason to question the permanence of the breakup, given that she testified similarly at the June 2 temporary custody hearing. Yet, Kristopher remained in Arizona and continued to see Mother and the children. *See Dependency Action No. 93511*, 154 Ariz. at 546 (recognizing it is the juvenile court's province to judge the credibility of the parties). Reasonable evidence supports the juvenile court's order adjudicating the children dependent as to Mother.[7]

**CONCLUSION**

¶17 The juvenile court's order adjudicating the children dependent as to Mother is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[7] Without fully developing her argument, Mother also argues the juvenile court failed to consider as a mitigating factor the availability of reasonable services to her to prevent or eliminate the need for removal of the children and her efforts to obtain and participate in services. *See* A.R.S. § 8-844(B). We disagree. The juvenile court clearly considered the services Mother received, including the present danger/safety plan initiated by DCS, Mother's substance abuse assessment with TERROS, which recommended counseling and a psychiatric evaluation, and Mother's engagement in parent-aide services.