NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KRYSTLE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, P.S, D.S., F.S., *Appellees.*

No. 1 CA-JV 21-0250
FILED 3-3-2022

Appeal from the Superior Court in Maricopa County
No. JD 527830
The Honorable David K. Udall, Judge (Retired)

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1 Krystle S. ("Mother") appeals the juvenile court's order adjudicating three of her children dependent on the grounds of neglect and abuse. She argues the court's ruling is clearly erroneous and contrary to substantial evidence in the record. For the following reasons, we affirm.

### BACKGROUND

¶2 Mother is the biological parent of P.S., born 2009, D.S., born 2010, and F.S., born 2015. Robert S. ("Father") is the biological parent of F.S. and the adoptive parent of P.S. and D.S. The parents have a long history with the Department of Child Safety ("DCS"), beginning in 2011 when DCS received its first report of neglect as to Mother. DCS continued to receive reports of neglect and physical abuse and filed its first dependency petition in 2014, alleging that P.S. and D.S. were dependent as to Mother. P.S. and D.S. were removed from Mother's custody in June 2014, but after Mother participated in services, the juvenile court dismissed the dependency in 2015.

¶3 Mother then enrolled P.S. and D.S. in counseling services, as both children were diagnosed with behavioral health disorders. They were prescribed medications to manage their symptoms and continued to receive counseling services from 2016 to 2018. During this time, the service providers modified P.S.'s and D.S.'s medications (through increased dosage or a different prescription) after Mother reported their behavior was not improving. But Mother did not follow through with scheduling additional recommended services for D.S. and P.S.

¶4 DCS received additional reports of neglect and abuse and filed a second dependency petition in 2018 alleging the three children were dependent as to both Mother and Father. Over DCS's objection, the court dismissed the petition in 2019.

¶5 In 2020, DCS received two reports of physical abuse. DCS determined the first report was unsubstantiated but asked Mesa Police to

file a report because DCS was unable to make contact with the family. The second report alleged that Mother was "overly aggressive" and noted marks and cuts on P.S. This report was still open at the time of the evidentiary hearing conducted as part of this dependency.

¶6 In April 2021, DCS received another report of physical abuse toward P.S. Later that month, DCS received a report that P.S. ran away from home and refused to return. Mesa Police responded to the incident and P.S. disclosed she did not want to go home because Mother physically abused her and she did not feel safe at home. A crisis team also responded and determined that P.S. would return home with Mother.

¶7 The following day, DCS investigative specialist Rebecca Campbell conducted a home visit. When she arrived, there were large piles of garbage in the home as well as a strong odor of feces inside and outside the home. Campbell also noted that "there was an excessive amount of flies in the home" and that she saw feces and urine on the floor. The home was in such disarray that she could not see the floor of D.S.'s room and noticed a swarm of flies over his bed. Campbell removed the children due to (1) the condition of the home, (2) the children's behavior, including P.S.'s refusal to return home the day before, and (3) concerns that Mother bullied P.S. and used excessive physical discipline.

¶8 DCS petitioned for dependency in April 2021, alleging in part that the children were dependent due to Mother's abuse and neglect.[1] DCS claimed that Mother failed to implement high needs case management for the children and obtain therapy for P.S., discontinued P.S.'s medication for behavioral health/mental health, and refused to give Campbell the children's laptops or login information to facilitate the children's online education through a group home. DCS also asserted that Mother's home was unfit because it was "filthy, infested with bugs and a health hazard," and that there was very little food in the home. DCS further relied on the family's history of physical abuse, including three open reports related to physical abuse, and the children's assertions that Mother physically abuses them.

¶9 Following a contested hearing, the juvenile court determined that DCS proved the allegations of the petition and found the children dependent as to Mother. The court adopted a family reunification case

---

[1] The children were found dependent as to Father after he pled no contest to the issue of dependency, but he is not a party to this appeal.

plan, and Mother timely appealed. We have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶10** We review a dependency order for an abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). We will not disturb the juvenile court's determination unless reasonable evidence does not support its factual findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010). The juvenile court is in the "best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987).

**¶11** As pertinent here, a child is dependent if adjudicated to be "[i]n need of proper and effective parental care and control," and without a "parent or guardian willing to exercise or capable of exercising such care and control," or if the parent's "home is unfit by reason of . . . neglect." A.R.S. § 8-201(15)(a)(i), (iii). Neglect includes the "inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter, or medical care if [it] causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). Abuse is defined as "the infliction or allowing of physical injury . . . caused by the acts or omissions of an individual who has the care, custody and control of a child." A.R.S. § 8-201(2).

**¶12** DCS has the burden of proving a dependency by a preponderance of the evidence, A.R.S. § 8-844(C) (1), and "the juvenile court is vested with a great deal of discretion" because the primary concern is the child's best interests, *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005) (citation and quotations omitted).

**¶13** The juvenile court determined that Mother is unable to parent due to neglect because she failed to provide the children with basic necessities. For example, when the children were removed from Mother's care "the home was filthy, infested with bugs, garbage and animal feces and urine. Mother minimized the condition of the home and blamed the children as to why the home was in that condition." The court also found that upon removal, "the children wanted to eat all the time. They hid and hoarded food." In addition, the court found that Mother refused to implement high needs case management for P.S., which had been recommended by a behavioral health provider.

**¶14**         Mother argues that her behavior did not constitute neglect because none of her actions caused an unreasonable risk of harm to the children's health or welfare.  She contends that she provided services for the children and denies any allegation of educational or nutritional neglect. She also argues her residence "was never as bad as alleged and that any issue with its cleanliness has been resolved."  But Mother points only to her own testimony to support these contentions, and we do not reweigh the evidence on appeal.  *See Louis C.*, 237 Ariz. at 488, ¶ 14.

**¶15**         The juvenile court also found that Mother is unable to parent due to abuse.  In doing so, the court noted Mother's history of physical abuse, including two prior dependencies due in part to physical abuse.  It further noted that when the dependency petition was filed, there were open reports of physical abuse and neglect as to Mother.[2]  Mother denies any allegation that she physically abused the children, again pointing only to her own testimony.  It is not our role, however, to reweigh the evidence.  *Id.*

**¶16**         At the dependency hearing, Campbell testified about the events leading up to the children's removal.  She described the condition of the home on the date of removal and P.S.'s statements that she did not want to return home and did not feel safe.  Campbell also testified about P.S.'s disclosures that Mother was physically abusive, the prior dependency filed in 2018 related to physical abuse, and the open reports of physical abuse/neglect as to Mother.  Finally, Campbell explained on direct and cross-examination that although Mother was offered services, she refused to engage in them.  The record provides ample support for the juvenile court's findings that the children are dependent as to Mother based on neglect and abuse.

---

[2]         Although the dependency petition cited three open reports of physical abuse, information submitted for the initial dependency hearing reflects that one of the reports was based on neglect.

**CONCLUSION**

¶17     We affirm the juvenile court's dependency order.



AMY M. WOOD • Clerk of the Court
FILED:    AA