NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ERYCA L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.P., *Appellees*.

No. 1 CA-JV 18-0275
FILED 2-12-2019

Appeal from the Superior Court in Mohave County
No. S8015JD201700074
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

————————————————

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge David D. Weinzweig joined.

————————————————

**S W A N N**, Judge:

¶1            Eryca L. ("Mother") appeals from the superior court's order severing her parental rights to R.P.  We affirm because reasonable evidence supports the severance order.

## FACTS AND PROCEDURAL HISTORY

¶2            Mother is the biological parent of R.P., born October 4, 2015. Mother has a history of illegal drug use, predating R.P.'s birth. While pregnant with R.P. in March 2015, she was treated at Southwest Behavioral & Health Services ("SBHS") for use of methamphetamine and heroin, and was diagnosed with opioid abuse, other stimulant abuse, generalized anxiety disorder, and major depressive disorder.  She used heroin throughout her pregnancy with R.P.

¶3            In December 2015, the Department of Child Safety received reports that Mother was neglecting R.P.  The Department discovered that Mother overdosed on heroin at a friend's house, became unconscious, and fell onto R.P.'s arm; R.P. was lying on a blanket covered with vomit and diarrhea.  The Department took custody of R.P. and filed a dependency petition that was later granted.  Mother soon reunified with R.P. after engaging in services recommended by the Department and the dependency was dismissed in June 2016.

¶4            In December 2016, Mother tested positive for methadone, methamphetamine, and opiates while receiving treatment at SBHS.  And in June 2017, Mother told SBHS that she had used heroin the day before.  At the time, she reported that she had no transportation or financial support and declined treatment from SBHS.  Later that month, the Department received a report that a four-year-old child was exposed to methamphetamine and was subsequently hospitalized after staying at Mother's home.

¶5            In July 2017, the Department received a report that Mother and her boyfriend were under the influence of methamphetamine and

heroin at home, in front of R.P. and her older sister, and that drugs were within reach of the children. In August 2017, the Department received another report that Mother was incoherent in her home, sitting naked with a bed sheet wrapped around her, and R.P. was "naked running around saying that she was hungry." R.P.'s nine-year-old sister had been responsible for taking care of R.P., and Mother had sores on her face.

¶6        A Kingman police  officer assisted a Department case manager  to Mother's home a few days later, where Mother appeared to be heavily under the influence. They executed a search warrant and observed a dirty home, loose cables and electrical cords, a syringe on the bathroom counter that would have been within R.P.'s reach, a teddy bear with two knives inside it, and labeled pill bottles in the refrigerator that suggested Mother may have been making drugs at home. Mother admitted that she was high on methamphetamine and was about to use heroin before going in the shower.

¶7        The Department removed R.P. from Mother's care, placed R.P. with her maternal aunt, and filed a second dependency petition. After Mother failed to appear at the initial hearing, the court established a dependency for R.P. The Department established a reunification plan and offered Mother services including drug testing, substance abuse services, parenting classes, individual counseling services, and parent aide services for supervised visitation. Mother was expected to refrain from using drugs or alcohol, seek and maintain employment, obtain housing, and keep her home clean and free of hazards.

¶8        In August 2017, Mother admitted to medical staff that she had been using heroin and methamphetamine intravenously, isolating, and "staying so high . . . numb and not participating in life." She continued to use drugs and in September, the Department again offered substance abuse counseling services to Mother, but Mother only wanted to set up visitation with R.P. In December 2017, Mother was admitted to Kingman Regional Medical Center after using heroin and stating she was not sure if she had a heroin overdose. She left the hospital early and returned two days later, admitting she had used drugs in the interim. While in the hospital, she was charged with possession of drug paraphernalia and heroin. She attempted to stay sober at a treatment facility but ultimately continued using heroin, methamphetamine and opiates and even brought drugs into the facility before discharging herself from treatment against the facility's recommendations.

**¶9**         From September 2017 to February 2018, Mother had some visits with R.P. that were supervised by a family member but she did not contact the Department to set up supervised visitation until February 2018. In February 2018, the Department requested a change of case plan to severance and adoption and the court granted the request.  The court told Mother to "continue to work her case plan, engage in services, and maintain her sobriety."  In late February 2018, the Department filed a motion to terminate Mother's parental rights to R.P., alleging neglect, chronic substance abuse, and six months' out-of-home placement.

**¶10**         Mother was arrested in February and March 2018 for shoplifting and on the December 2017 drug charge due to an outstanding warrant.  During the March arrest, police found a vial of urine in her backpack.  At the time of the severance trial, those matters had not been resolved.

**¶11**         In March 2018, Mother began engaging in services again, albeit inconsistently.  She had negative drug test results except for one diluted test and tested approximately 50% of the time she was asked.  She also attended counseling and substance abuse treatment inconsistently, although at the severance trial, the Department admitted it did not then have recent records regarding Mother's sobriety or attempts at making behavior changes.

**¶12**         The superior court held a severance trial in June 2018.  The Department's case worker testified that R.P. is currently in an adoptive placement, is comfortable there, and trusts her placement to provide for her. The court granted the motion for termination of parental rights on the grounds of neglect and chronic substance abuse.  *See* A.R.S. § 8-533(B)(2), (3). Mother appeals.

## DISCUSSION

**¶13**         The superior court is in the best position to "weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings."  *Pima Cty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987).  We review a severance ruling for an abuse of discretion and defer to the superior court's credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  We will not reweigh the evidence, but will only determine if evidence exists to support the court's ruling. *Id.*

I.      REASONABLE EVIDENCE SUPPORTS THE SUPERIOR COURT'S ORDER SEVERING MOTHER'S RIGHTS UNDER A.R.S. § 8-533(B)(3).

¶14      Mother argues the superior court erred because it was not presented with clear and convincing evidence that Mother is unable to discharge her parental responsibilities due to substance abuse.   She contends that because the superior court did not have four months' of substance abuse treatment records, there are no reasonable grounds to believe her substance abuse will continue indefinitely.

¶15      A court may terminate parental rights when a parent is unable to discharge parental responsibilities because of "a history of chronic abuse of dangerous drugs . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3).  Chronic substance abuse is not necessarily constant, but rather long-lasting.  *Raymond F. v Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010).  A parent's temporary period of sobriety does not necessarily outweigh her history of drug abuse or her inability to remain sober during the case.  *See id.* at 379, ¶ 29.  The court must also find that the Department made reasonable efforts to reunify the family or that those efforts would have been futile.  *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

¶16      Here, Mother argues she engaged in substance abuse treatment and counseling, provided negative samples when drug tested, and had her drug testing reduced from three to two times per week.  Mother further contends that the Department had not received her substance abuse treatment records since February 2018, which could reflect behavioral changes and recent engagement in those services.

¶17      There was sufficient evidence to permit the court to conclude that Mother's substantial history with drug abuse indicates she has difficulty     maintaining     sobriety.     She     had     used     heroin     and methamphetamine since before R.P.'s birth and did not stop using through her pregnancy or after R.P. was born.  It is true that Mother engaged in some services; she submitted to drug testing, but only completed about one-half of the required tests and submitted a diluted sample.  She was not available for services even after the Department met with her and explained what she needed to do.  Mother engaged in treatment only after the case plan changed to severance and adoption, and only agreed to participate in the treatment sessions she wanted.  Mother argues there is no evidence showing she is unable to parent R.P., yet the superior court reasonably

could have concluded that, based upon Mother's history and behavior, her condition is likely to continue. Though the Department did not have four months' worth of records regarding Mother's activities and attempts at sobriety, those four months would not outweigh Mother's history with drugs or her inability to complete services fully. *See Raymond F.*, 224 Ariz. at 379, ¶ 29. Therefore, the superior court did not err when it terminated Mother's parental rights on the basis of chronic substance abuse.[1]

## II. REASONABLE EVIDENCE SUPPORTS THE COURT'S FINDING THAT SEVERANCE OF MOTHER'S PARENTAL RIGHTS SERVED R.P.'S BEST INTERESTS.

**¶18** Mother argues severance is not in R.P.'s best interests because she secured housing, employment, and health insurance, and because visits with R.P. went well.

**¶19** We accept the superior court's findings if reasonable evidence supports them and will affirm a severance order unless clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). The moving party must prove by a preponderance of the evidence that termination of parental rights is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The petitioner may show severance is in the child's best interests if continued custody by the parent would harm the child, or if removal would benefit the child. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 14 (App. 2002). The requirement may also be met if the moving party shows that there exists an adoptive plan for the child, or if the child is adoptable. *Demetrius L.*, 239 Ariz. at 4, ¶ 12.

**¶20** Here, the superior court found that adoption would provide R.P. with permanency and that she is considered adoptable. The court also found that continuation of the parent-child relationship would delay permanency because Mother is unable to care for R.P. due to her chronic substance abuse. Though Mother argues she has bonded with R.P., the presence of a parent-child bond is not dispositive when considering the child's best interests. *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96,

---

[1] Because we find reasonable evidence supports the court's severance order under A.R.S. § 8-533(B)(3), we do not address whether the evidence also supported severance under § 8-533(B)(2). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

98–99, ¶ 12 (App. 2016). The totality of the circumstances reasonably shows that Mother is unable to care for R.P. and is unlikely to maintain sobriety. *See id.* Even after the Department removed R.P. from her care, she continued to abuse drugs and did not complete all recommended services. Accordingly, the superior court did not err in determining that severance was in R.P.'s best interests.

## CONCLUSION

¶21 Because reasonable evidence supported the superior court's order terminating Mother's parental rights to R.P., we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA