NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HEATHER D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, F.L., G.L., *Appellees*.

No. 1 CA-JV 14-0306
FILED 5-21-2015

Appeal from the Superior Court in Mohave County
No. S8015JD201100044
The Honorable Richard Weis, Judge

**AFFIRMED**

COUNSEL

Law Offices of Heather C. Wellborn, P.C., Lake Havasu City
By Heather C. Wellborn
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee* Department of Child Safety

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Donn Kessler joined.

---

**W I N T H R O P**, Presiding Judge:

¶1 Heather D. ("Mother") appeals the juvenile court's order severing her parental rights to F.L. and G.L. (collectively, "the children") on the grounds of chronic substance abuse and prior removal.[1] *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (11) (West 2015).[2] For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[3]

¶2 Mother is the biological mother of F.L. and G.L., who were born in October 2008 and September 2010, respectively. Mother has a long history of drug abuse, and was convicted of misconduct involving weapons in 2007. In 2010, she pled guilty to possession of drug (methamphetamine) paraphernalia, and was sentenced to 1.25 years' imprisonment in the Arizona Department of Corrections ("ADOC"). After Mother's release from ADOC in September 2011, Mother and Father lived in a home with F.L., G.L., and Mother's children from previous relationships, E.L. and N.L.[4]

---

[1]     The juvenile court also terminated the parental rights of the children's biological father ("Father"). Father is not a party to this appeal.

[2]     We cite the current version of all statutes unless changes material to our decision have occurred since the severance.

[3]     We view the facts in the light most favorable to upholding the juvenile court's order. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20, 995 P.2d 682, 686 (2000) (citation omitted).

[4]     Only F.L. and G.L. are subject to the juvenile court's severance order and this appeal.

¶3        On November 24, 2011, the Department of Child Safety ("DCS")[5] received a report that Mother and Father were in police custody pending an investigation of a homicide that may have occurred at their home.  Father had allegedly murdered a man staying with the family, the children were allegedly in the home when the crime occurred, and Mother, who was on parole, was suspected of helping Father commit the murder and/or dismember and dispose of the victim's body.  DCS took temporary custody of all four children, placed them in foster care, and petitioned the juvenile court to declare each of the children dependent as to both of their parents.  DCS alleged Mother was unable to parent the children due in part to substance abuse, domestic violence, neglect, and a history of criminal activities and incarceration.

¶4        Although she had been arrested, Mother was released and not charged with a crime relating to the death of the man in the family's home.[6]  Mother was then incarcerated for violating her parole, and released again in February 2012.

¶5        In March 2012, the juvenile court adjudicated all four children dependent and ordered a case plan of family reunification.  In support of the case plan, DCS offered Mother numerous services, including substance abuse treatment, random drug testing, mental health services, psychological evaluations, individual and family counseling, life skills training, parenting classes, parent aide services, supervised visitation, family reunification teams, housing assistance, and transportation.

¶6        During the dependency, Mother was diagnosed with polysubstance dependence, and she tested positive for THC (a marijuana metabolite) in March and April 2012.  By November 2012, however, she had

---

[5]        At the outset of these proceedings, the children were taken into care by Child Protective Services ("CPS"), formerly a division of the Arizona Department of Economic Security ("ADES"), and ADES filed both dependency petitions in this case.  In May 2014, CPS was removed as an entity within ADES and replaced by DCS, an entity outside of ADES.  *See* 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2d Spec. Sess.).  Accordingly, DCS has been substituted for ADES in this matter.  *See* ARCAP 27.  References to DCS encompass both ADES and the former CPS.

[6]        Father was charged with first-degree murder, and Mother was called as a witness at Father's trial.  Father was found guilty and sentenced to natural life plus additional years' imprisonment in ADOC, and he has filed an appeal in this court.

completed a substance abuse treatment program, maintained her sobriety, and enrolled in an aftercare program. Mother also obtained employment and housing, and by February 2013, DCS had returned the children to her physical custody with continued monitoring under an in-home dependency.

¶7 In April 2013, DCS moved to dismiss the dependency petition. In an order filed April 24, 2013, the juvenile court dismissed the dependency and relieved DCS of further responsibility for the children after finding they were no longer dependent as to Mother.

¶8 Five months later, however, DCS received a report that Mother had been arrested and charged with possession of marijuana and drug paraphernalia in June 2013. DCS also learned Mother had been leaving E.L., F.L., and G.L. with relatives for extended periods of time with little to no contact with them,[7] and she was allowing as many as fourteen people to reside in her home. A DCS caseworker contacted Mother, who was facing jail time for the June 2013 drug charges and admitted she was actively using methamphetamine. Mother submitted to drug testing, which indicated positive for amphetamine, methamphetamine, and marijuana. Consequently, DCS took temporary custody of E.L., F.L., and G.L., and placed them in foster care.

¶9 On September 25, 2013, DCS filed another dependency petition, alleging E.L., F.L., and G.L. were dependent as to their biological parents. As to Mother, DCS alleged she was unable to parent the children due in part to neglect, substance abuse, and her pending incarceration.

¶10 On October 1, 2013, Mother agreed to participate in another substance abuse assessment and follow any recommendations. She also agreed to participate in drug testing, a psychological evaluation, counseling, parenting classes, parent aide services, and supervised visitation. On October 30, 2013, the juvenile court adjudicated the children dependent, approved a case plan of family reunification, and approved the services offered by DCS in furtherance of the plan.

¶11 Over approximately the next six months, Mother refused to participate in any offered services, with the exception of supervised visits with the children. Mother also continued to abuse methamphetamine and marijuana, was unemployed, and lacked stable housing. Despite DCS's

---

[7] N.L.'s biological father had come to Arizona and taken N.L. to live with him.

efforts to engage her in services, Mother insisted she did not need them because she had completed them before and was "tired of jumping through hoops." She further claimed her drug use did not impact her ability to parent the children and, therefore, she did not need to stop using drugs.

¶12 Mother also failed to stay out of jail. In December 2013, Mother was arrested and incarcerated for driving on a suspended license and providing false information to a police officer. In May 2014, Mother was arrested and charged with possession of dangerous drugs (methamphetamine) and drug paraphernalia. At that time, there was a warrant for her arrest for failing to appear for a court hearing regarding the 2013 drug charges. Later that month, Mother pled guilty to possession of drug paraphernalia, was placed on probation for two years, and as a condition of probation, was ordered to serve up to thirty days in jail.

¶13 Although Mother participated in supervised visits with the children when she was not incarcerated, her visits with E.L. were suspended by DCS in December 2013 due to the child's adverse emotional reactions following the visits. During a February 15, 2014 visit with F.L. and G.L., Mother told the parent aide she wanted to "knock" the parent aide "over the head" so she could take the children out of the state. When the parent aide advised Mother that would not be wise, Mother agreed, but soon after became agitated and frustrated with the children, and starting cursing. Mother later explained "outside influences" were affecting her, and F.L. had told her "if you don't hurry and take us, they will eat us." Soon thereafter, DCS learned (1) Mother had previously asked F.L. where she was living and going to school, (2) Mother had informed the paternal grandmother that she planned to kidnap the children and take them to Las Vegas, and (3) a strange man had recently showed up at E.L.'s foster home late at night claiming to be a neighbor. Due to ongoing concerns that Mother posed a risk to the children's safety, DCS moved for an order suspending her visits with E.L., F.L., and G.L. In March 2014, the juvenile court suspended Mother's visits with all of the children.

¶14 On April 9, 2014, the juvenile court held a permanency planning hearing. Case manager Mandy Chamberlain reported Mother refused to participate in treatment services and admitted using methamphetamine on a regular basis. Ms. Chamberlain opined that Mother's substance abuse "continues to prevent . . . her from providing supervision, safety, and stability" for the children, and the children would be at risk of "ongoing abuse, neglect, injury, ailment, and possible death" in her care. At the hearing, DCS informed the court it planned to reunify E.L. with his biological father, and requested the court approve a case plan

of severance and adoption for F.L. and G.L. The court changed the case plan to severance and adoption for F.L. and G.L.[8]

¶15     On May 6, 2014, DCS filed a motion to terminate Mother's and Father's parental rights to F.L. and G.L. With regard to Mother, the motion as amended alleged (1) she was unable to discharge her parental responsibilities due to a history of chronic substance abuse under A.R.S. § 8-533(B)(3); (2) she had substantially neglected or wilfully refused and was unable to remedy the circumstances that caused F.L. and G.L. to remain in out-of-home placement for nine and fifteen months or longer under A.R.S. § 8-533(B)(8)(a) and (c), respectively; and (3) the children had been removed and then returned to her legal custody and subsequently removed again within eighteen months, and she was currently unable to discharge her parental responsibilities under A.R.S. § 8-533(B)(11). The motion further alleged that termination was in the children's best interest. Mother denied the allegations in the motion, and the juvenile court set the matter for a contested severance hearing on September 8, 2014.[9]

¶16     At trial, Mother testified she struggled to maintain her sobriety after the children were returned to her care in early 2013, and she "ended up relapsing." Mother testified she did not participate in the treatment services subsequently offered, however, because they were "not for [her]." Mother also claimed she had been sober for forty-five days, but could not provide independent verification because she admittedly was not participating in drug testing.

¶17     At the conclusion of the trial, the juvenile court found DCS had proven by clear and convincing evidence that termination of Mother's parental rights was justified on the grounds of chronic substance abuse under A.R.S. § 8-533(B)(3), nine months' out-of-home placement under A.R.S. § 8-533(B)(8)(a), and prior removal under A.R.S. § 8-533(B)(11). The court further found termination was in the children's best interest. The court then granted DCS's motion "in its entirety, excluding the [fifteen

---

[8]     Shortly thereafter, on April 17, 2014, Mother tested positive for amphetamine, methamphetamine, and marijuana.

[9]     Meanwhile, in July 2014, Mother moved to Colorado to stay with her father. At the severance trial, Mother explained she left Arizona because "either I was going to end up dead or who knows."

months' time-in-care] ground." The court's signed order terminating Mother's parental rights to F.L. and G.L. was filed October 17, 2014.[10]

**¶18** Mother timely appealed from that order. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## ANALYSIS

### I. Termination Pursuant to A.R.S. § 8-533(B)(3) and (11)

**¶19** Mother argues the juvenile court erred in finding clear and convincing evidence existed to support termination of her parental rights pursuant to A.R.S. § 8-533(B)(3). She maintains DCS failed to establish that she is unable to discharge her parental responsibilities due to a history of chronic abuse of dangerous drugs, controlled substances, and/or alcohol, and this condition will continue for a prolonged period of time.

**¶20** "We will not disturb the juvenile court's disposition absent an abuse of discretion or unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them." *Maricopa Cnty. Juv. Action No. JV–132905*, 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996) (citations omitted); *accord Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 78–79, ¶ 9, 41 P.3d 614, 616–17 (App. 2001). Because "the juvenile court [i]s in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987), we will not reweigh the evidence but will look only to determine if there is evidence to sustain the court's ruling. *JV–132905*, 186 Ariz. at 609, 925 P.2d at 750.

---

[10] The transcript of the severance hearing and the juvenile court's minute entry order indicate the court intended to terminate Mother's parental rights to the children on all three of the grounds it found, including the ground of nine months' out-of-home placement under A.R.S. § 8-533(B)(8)(a). However, DCS's proposed Findings of Fact, Conclusions of Law, and Order - which the juvenile court signed as its final order - omitted the out-of-home placement ground. Although the State notes Mother does not raise this issue on appeal, the State has not cross-appealed from the court's October 17, 2014 severance order. Consequently, we do not (and in this case, need not) consider the nine months' out-of-home placement ground under A.R.S. § 8-533(B)(8)(a).

¶21        Although the right to custody of one's children is fundamental, it is not absolute. *See Michael J.*, 196 Ariz. at 248, ¶¶ 11–12, 995 P.2d at 684. To sever parental rights, the juvenile court need find by clear and convincing evidence only one statutory ground enumerated in A.R.S. § 8–533(B). *Id.* at 249, ¶ 12, 995 P.2d at 685. In addition, the court must find by a preponderance of the evidence that termination is in the best interest of the children. *See id.*; *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005).

¶22        Although Mother challenges the juvenile court's termination of her parental rights pursuant to A.R.S. § 8-533(B)(3), she fails to challenge the court's additional finding that termination was justified on the ground of prior removal pursuant to A.R.S. § 8-533(B)(11). Because Mother does not challenge the portion of the order based on A.R.S. § 8-533(B)(11), she has waived any challenge to the court's order based on that ground. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App. 2000) ("[I]ssues not clearly raised in appellate briefs are deemed waived."). Thus, even were we to find the juvenile court erred in terminating Mother's parental rights on the ground of chronic substance abuse under A.R.S. § 8-533(B)(3), we would still affirm the court's order under A.R.S. § 8-533(B)(11). *See Michael J.*, 196 Ariz. at 251, ¶ 27, 995 P.2d at 687 ("Because we affirm the trial court's order granting severance on the basis of abandonment, we need not consider whether the trial court's findings justified severance on the other grounds announced by the court."); *see also Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." (citations omitted)); A.R.S. § 8-533(B) ("Evidence sufficient to justify the termination of the parent-child relationship shall include any *one* of the [enumerated termination grounds]." (Emphasis added.)). Because the juvenile court's finding that termination was justified on the statutory ground of prior removal was uncontested, Mother's argument on appeal regarding the ground of chronic substance abuse is moot, and we need not address it.

¶23        Nevertheless, even were we to assume *arguendo* that Mother's argument regarding A.R.S. § 8-533(B)(3) is not moot, reasonable evidence supports the juvenile court's finding that Mother was unable to discharge her parental responsibilities due to a history of substance abuse and that her condition would continue for a prolonged indeterminate period of time under A.R.S. § 8-533(B)(3).

¶24 Under § 8-533(B)(3), the juvenile court may grant a motion to terminate parental rights if it finds the parent "is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A parent's failure to remedy substance abuse "despite knowing the loss of [her] children was imminent, is evidence [she] has not overcome [her] dependence on drugs." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29, 231 P.3d 377, 383 (App. 2010).

¶25 The record indicates Mother has a history of abusing marijuana dating to at least 2006 and methamphetamine dating to at least 2009, and her history of drug abuse has interfered with her ability to safely parent the children and provide them with a safe and stable home. Mother used marijuana while pregnant with F.L., was unable to parent the children while incarcerated on drug-related charges in 2010-11 and briefly in 2013, had a hard time remembering to do things and controlling her emotions, and threatened to kidnap the children while they were in foster care. DCS case manager Mandy Chamberlain opined that Mother's continued drug use placed F.L. and G.L. at risk of abuse, neglect, and possibly even death.

¶26 Although Mother had participated in substance abuse treatment programs in the past - at the request of both DCS and the adult probation department - she was unable to abstain from using illegal drugs. And even though Mother successfully completed the substance abuse treatment program related to the first dependency in November 2012 and regained legal custody of F.L. and G.L. a few months later, she admittedly relapsed by no later than June 2013. During this time, Mother often left the children with relatives because she was "overwhelmed." Consequently, in September 2013, DCS removed F.L. and G.L. from Mother's care for the second time in less than two years.

¶27 Although Mother acknowledged she needed to demonstrate a pattern of sobriety before DCS could return the children to her care, she continued to abuse methamphetamine and marijuana and refused to participate in the numerous treatment services offered her. In support of her refusal, Mother maintained she did not have a drug problem, her drug use did not interfere with her ability to safely parent the children, and treatment was therefore unnecessary.

¶28 At trial, Ms. Chamberlain opined that the longer Mother continued to abuse illegal drugs, the harder it would be for her to stop using them. Ms. Chamberlain further opined that, given Mother's history of drug

abuse, Mother needed to participate in an inpatient or an intensive outpatient treatment program before she could maintain sobriety long enough for DCS to consider placing the children in her care. Ms. Chamberlain testified that, despite her efforts to engage Mother in treatment services, Mother had refused to do so. At trial, Mother admitted she had refused to participate in treatment services, and although she claimed she had been sober for forty-five days before trial, she acknowledged she was not participating in drug testing and thus could provide no independent verification. In this case, reasonable evidence supports the juvenile court's finding that Mother was unable to discharge her parental responsibilities due to a history of substance abuse and that her condition would continue for a prolonged indeterminate period of time under A.R.S. § 8-533(B)(3).

## II. *Best Interest of the Children*

¶29 Mother also claims the juvenile court erred in finding termination of her parental rights was in the children's best interest. Because reasonable evidence supports the court's best interest finding, Mother's claim fails.

¶30 To effectuate severance, the court must find, by a preponderance of the evidence, termination of the parent-child relationship is in a child's best interest. A.R.S. § 8–533(B); *Kent K.*, 210 Ariz. at 284, ¶ 22, 110 P.3d at 1018. To support a best interest finding, the petitioner must prove that the child will affirmatively benefit from the termination. *Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 6, 804 P.2d 730, 735 (1990). This means that "a determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Id.* at 5, 804 P.2d at 734. The best interest requirement may be met if, for example, the petitioner proves a current adoptive plan exists for the child, *id.* at 6, 804 P.2d at 735, or even that the child is adoptable. *Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994). The juvenile court may also consider evidence that an existing placement is meeting the needs of the child in determining severance is in the child's best interest. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998). Moreover, "where there is clear and convincing evidence of parental unfitness which has not been remedied notwithstanding the provision of services by [DCS] and which detrimentally affects the child's well-being, severance may be warranted and appropriate." *Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158, 781 P.2d 634, 636 (App. 1989).

¶31　　　　　In this case, the record supports the juvenile court's finding that severance was in the children's best interest.  At the time of trial, five-year-old F.L. and four-year-old G.L. had been removed from Mother's care on two separate occasions and had been in an out-of-home placement for a cumulative period of approximately twenty-seven months.  The children were placed together with a foster family willing to adopt them - the same family that cared for them when they were previously removed from Mother's care - and the children were bonded to their foster family.  Ms. Chamberlain testified the children "have been through a lot for their very young age," have shown they do well with consistency, need structure, and deserve permanency.  She further testified the adoptive placement was providing them with a safe and stable environment, which Mother could not provide.  The evidence supports the finding that termination would benefit the children.

¶32　　　　　Further, although Mother claims "she has a very significant bond with the minor children," we will not reweigh the evidence on appeal, *see Jesus M.*, 203 Ariz. at 282, ¶ 12, 53 P.3d at 207, and evidence of a bond with Mother does not necessarily preclude a finding that severance would serve the children's best interest.  *See In re Rafael S.*, 9 A.3d 417, 423 (Conn. App. Ct. 2010) (recognizing "even when there is a finding of a bond between parent and a child, it still may be in the child's best interest to terminate parental rights" (citation omitted)); *accord In re T.S.M.*, 71 A.3d 251, 268-69 (Pa. 2013).

¶33　　　　　The record demonstrates that continuing the parent-child relationships between Mother and the children would harm the children by depriving them of the chance to move toward permanency when Mother has proven incapable of caring for them.  The children have been removed from Mother's care on two separate occasions and waited a substantial period of time in foster care for Mother to overcome her drug issues.  Mother has shown little interest in addressing her addiction since the first dependency and has given little consideration for the children's needs since relapsing.  Ms. Chamberlain opined that Mother did not have the ability to meet the children's basic and emotional needs, and her continued drug use placed the children at risk of neglect, abuse, and even death.  Severance thus served the children's best interest - and outweighed whatever bond Mother had with them - because it allowed them to be adopted by a family that could provide them with the care and stability that Mother could not.  Reasonable evidence therefore supports the juvenile court's finding that termination of Mother's parental rights was in the children's best interest.

## CONCLUSION

¶34 The juvenile court's order severing Mother's parental rights to F.L. and G.L. is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama